## W. J. McDANIEL v. STATE.

### No. 1081.   Decided October 11, 1911.

**1.—Swindling—Indictment—Surplusage.**

Where certain allegations in an indictment for swindling could be regarded as surplusage and still leave a valid indictment, there was no error in overruling a motion to quash.

**2.—Same—Insufficiency of the Evidence.**

Where, upon trial for swindling, the evidence did not show that the alleged injured party parted with the possession of the alleged property by reason of the alleged false pretenses alone, the conviction could not be sustained.

**3.—Same—Case Stated.**

Where, upon trial of swindling, the indictment alleged that the defendant represented that he was a member of a certain construction company, which was solvent and able to build a railway, that defendant was solvent, etc., by reason of which he obtained the contract and $1,000, etc., but the evidence showed that the money was not paid out on these representations, the conviction could not be sustained.

Appeal from the District Court of Hood.   Tried below before the Hon. W. J. Oxford.

Appeal from a conviction of swindling;   penalty, two years confinement in the penitentiary.

The opinion states the case.

*Mark McMahon*, for appellant.—Cited cases in the opinion.

*C. E. Lane*, Assistant Attorney-General, for the State.

HARPER, JUDGE.—Appellant was indicted, charged with swindling. The court submitted to the jury only the seventh count in the indictment, upon which appellant was found guilty, and his punishment assessed at two years confinement in the penitentiary.

This seventh count alleges the unlawful acquisition of one thousand dollars by means of certain false representations.   It is alleged, in substance, that appellant represented that he was a member of the Western Construction Company, and that said company was solvent and able to build a railway proposed; that the headquarters of such company was at Houston, and G. W. Hubbard and Joe Bowers were members of said company, as well as defendant; that defendant was solvent and worth ten thousand dollars above his liabilities, whereas in truth and in fact said defendant was not a member of the Western Construction Company, and said Bowers and Hubbard were not members of said company, and said company was not in fact solvent and able to build a railway as proposed.   That by reason of the false representations defendant obtained a contract with certain citizens named to build a railway from Lipan to a connection with the Fort Worth and Denver road, and obtained $1,000 under said contract.

We do not think the motion to quash the seventh count in the in-

dictment should have been sustained. It is true, to make the indictment clear that it only charges the obtaining of $1,000, that certain allegations in regard to the allegations of value of the contract must be treated as surplusage, but this may be done, and then the allegation would be specific.

However, we have read this record carefully, and we do not think the evidence supports the allegations in the indictment.

While it is true that the evidence would show that appellant represented that he was a member of the Western Construction Company, and that Hubbard, Bowers and Fairtrace were also members of such company, and that said company was solvent and able to build a line of railway as proposed, when in truth and in fact Hubbard, Bowers and Fairtrace were not members of such company, and the inference is strong that there was not then and had never been such company organized, and but for this representation the prosecuting witnesses would not have contracted with appellant, yet the contract itself says the one thousand dollars was to be paid to appellant and used by him in making a survey of the line, blue prints, etc. It appears that he did make some kind of a survey, made blue prints showing the location of the line on the ground, and submitted them to prosecuting witnesses, together with a contract to build the railway. It is true the contract called for the construction of the road by the Western Construction Company, while the contract submitted was with the Taylor and Lipan R. R. Co. Appellant suggested if the contract was not satisfactory, to make pencil memoranda thereon and return to him. This was not done apparently for the reason it had been learned there was no such company as the Western Construction Company. But it also appears from the evidence that this information was known to Mr. Roach, the custodian of the money, prior to the time he paid any of the money to appellant.

Article 943 of the Penal Code provides, that swindling is the acquisition of any personal or movable property, money or instrument of writing conveying or securing a valuable right by means of some false and deceitful means or device, etc. The statute is clear that the injured party must part with the possession of the money, or other thing of value, by reason of the false pretenses alone. In Blum v. State, 20 Texas Crim. App., 578, the court lays down four distinct elements of swindling, all of which must concur, as follows: (1) There must be an intent to defraud; (2) There must be an actual act of fraud committed; (3) False pretenses must have been made by the accused; (4) The fraud must have been accomplished by means of the false pretenses made use of for the purpose. The very essential element of the offense is that the party injured in parting with his property actually relied upon and was deceived by the false pretenses, etc., which were used by the accused. Curtis v. State, 31 Texas Crim. App., 39; Hardin v. State, 25 Texas Crim. App., 74; Blum v. State, supra; Hightower v. State, 23 Texas Crim. App., 451; Mathena v. State, 15

Texas Crim. App., 473; Ervin v. State, 11 Texas Crim. App., 536;
Buckalew v. State, 11 Texas Crim. App., 352; White v. State, 3 Texas
Crim. App., 605; Warrington v. State, 1 Texas Crim. App., 168; Ep-
person v. State, 42 Texas, 79.

Does the evidence show that the prosecuting witnesses relied on the
false statements in parting with the money? All the witnesses state
that the money was turned over to Mr. Roach, treasurer, to be paid
out by him. Mr. Roach testifies:

"I had placed the money to my individual account and had told them
to draw on the Farmers and Merchants' Bank and that the draft would
be paid. The committee had given me power to deal with it as I
saw proper, and I paid it out on their instructions. They had told me
to pay it out according to the terms of the contract and left it to my
judgment when to pay it, and I honored and paid the drafts when
they came in. I did phone the Western National Bank of Ft. Worth
as to the defendant and the construction company. I did this because
the defendant had called me up on the phone and inquired about the
money, and wanted to know in regard to it, and referred us to the
president of the Western National Bank of Ft. Worth. I then called
him up and asked about them, and he said he didn't know anything
about them. No draft had come at that time. I was advised at that
time also that there was no such thing as the Western Construction
Company."

If Mr. Roach knew before paying out any of the money that there
was no such thing as the Western Construction Company, he can not
claim to have parted with the money relying on that representation.
Again, the testimony does not show that the representation that appel-
lant was solvent and ten thousand dollars could be made out of him,
was false. It is true that Hubbard and Bowers say they had at
different times loaned him money, and they did not know of any
property he owned, but their evidence also discloses that appellant
was at the time president of the Temple & Northwestern Railroad, run-
ning from Temple to Hamilton, and Gatesville to Hamilton, about
100 miles long. That thirty-five miles of the road had been graded,
and some steel laid. This evidence would not show the statement of
appellant as to his individual financial condition to be false.

Again, the contract entered into by appellant and the parties named
in the indictment, provides that the one thousand dollars is to be
used in making a survey of the line, etc., by appellant, and after such
survey appellant was to submit a proposition whereby the construction
company was to build the line of railway, the citizens of Lipan, upon
the acceptance of the proposition, to give a cash bonus of $17,500 to be
paid when the first train run into Lipan, the payment of which sum
was to be guaranteed by the two banks at Lipan. From the evidence
it appears that appellant did make some character of a survey; did
make blue prints and profiles of the projected railway, and furnished
them to the committee, and at the same time submitted a proposition

to build the railroad, in the name of the Taylor & Lipan R. R. instead of in the name of the construction company. These papers at the time of the trial were in the possession of the State witnesses, the committee of ten. Appellant at the time he submitted the blue prints, contract to build, etc., requested if the contract was not satisfactory, to make pencil memorandum of suggested changes. This was not done, and neither did they ever notify appellant that the bonus had been made up and guaranteed by the banks. If Mr. Roach at the time and before he paid the $1,000, knew that there was no such concern as the Western Construction Company, and subsequently appellant made a bona fide proposition to build the road upon the committee complying with their part of the contract, and the matter was dropped by the nonaction of the committee, can it be presumed that if they had complied in good faith with the terms of the contract, that appellant could not and would not have performed his part? The contract did not require them to pay any more money until the road was completed; only to sign up a contract to pay the bonus when the road was completed, and have the payment at that time guaranteed by the banks. After getting the $1,000 appellant submitted a proposition to build the road in accordance with the stipulations, only it was to be built by the Taylor & Lipan R. R. Co. instead of the construction company. It is the usual custom in this country to make the bonus payable to the railroad company, and the railroad company lets the contract to build, to a construction company. By the action of the citizens' committee in refusing or neglecting to comply with their part of the contract, we are left to conjecture whether or not appellant could or would have arranged for the building of the road.

We do not think the evidence supports the conviction, and it is useless to discuss the other assignments of error.

The judgment is reversed and remanded.

*Reversed and remanded.*

Davidson, Presiding Judge, absent.