## BYRD JACKSON COCHRAIN v. THE STATE.

No. 6463.   Decided February 15, 1922.

Rehearing Denied February 21, 1923.

**1.—Swindling—Indictment.**

Where, upon trial of swindling, the allegations in the indictment were sufficient to charge a violation of the statute, the general exception thereto was correctly overruled.

**2.—Same—Evidence—Conspiracy—Rule Stated.**

Where, upon trial of swindling, the evidence developed a conspiracy between defendant and other parties, there was no error in admitting the acts and declarations of each of the co-conspirators done and made in pursuance of the common design, to-wit, in getting the alleged money from the party injured, and also prior to obtaining the same as evidence against the defendant. Following Middleton v. State, 86 Texas Crim. Rep., 307.

**3.—Same—Evidence—Bills of Exception—Insurance Company—Change of Beneficiary.**

This court holds that questions relating to a change of beneficiary by the insurance company or the payment of premiums upon such policy, etc., are such matters as would not be of any moment, and that errors asserted in regard thereto are immaterial, and the same is true as to affidavit of the undertaker sent to the insurance company to prove death claim.

**4.—Same—Bills of Exception—Evidence—Fraudulent Intent.**

In the opinion of the court a statement of the contents of many bills of exceptions obviate the necessity for any discussion of them at length, as matters relating to the receipt of the money which formed the basis of the swindle, and the disposition of same by the defendant or his wife were material circumstances bearing upon the fraudulent purpose and intent in the acquisition of said money, as were also the other matters contained in said bills of exception, and there is no reversible error.

**5.—Same—Sufficiency of the Evidence—Charge of Court.**

Where, upon trial of swindling, the evidence sustained the conviction. under a proper charge of the court, together with the theory of the defense, there is no reversible error.

**6.—Same—Continuance—Want of Diligence—Immaterial Testimony.**

Where the application for continuance showed a want of diligence and the alleged testimony of the absent witnesses was immaterial under the facts in the instant case, there was no error in overruling the same.

**7.—Same—Charge of Court—Principals.**

Where a number of exceptions were taken to the charge of the court, many of which seemed to be based upon an erroneous assumption that the act of one principal cannot be charged to another, etc., there was no reversible error.

**8.—Same—Rehearing—Indictment—Demurrer.**

Where appellant, in his motion for a new trial, took exceptions to certain language in the original opinion that a special exception was necessary to reach the fault of the indictment; held, that no such interpretation was intended.

**9.—Same—Indictment—Corporation—Representations—Particular Persons or Agents.**

Where it was urged that the indictment alleged that defendant intended to swindle and defraud, and did swindle and defraud, a corporation, that the alleged false representations were made to the corporation, and did not name the particular person or agent to whom they were made, and therefore charged no offense, held,' that the same is untenable, under Article 24 P. C., as in a proper case as in the instant one it may be properly alleged that the false representations were made to the corporation, qualifying Pruitt v. State, 83 Texas Crim. Rep., 148.

**10.—Same—Indictment—Written Proof of Death.**

Where it was contended in the motion for rehearing that the indictment is bad for failure to set out the written proof of death forwarded by defendant's wife to the insurance company, and that in the absence of such instrument defendant's objection on that ground should have been sustained when it was offered in evidence; held, that such contention is untenable, as this document was not the basis of the swindle. Morrow, Presiding Judge,, assenting under qualifications.

Appeal from the District Court of Stonewall. Tried below before the Honorable W. R. Chapman.

Appeal from a conviction of swindling; penalty, two years imprisonment in the penitentiary.

*Stinson, Coombes & Brooks,* and *J. E. Robinson,* for appellant. On question of insufficiency of indictment, Dwyer v. State, 24 Texas Crim App., 136, and cases cited in opinion.

*R. G. Storey,* Assistant Attorney General, and *Joe C. Randel,* District Attorney, for the State.—Cited, cases in opinion.

LATTIMORE, Judge.—Appellant was convicted in the District Court of Stonewall County of the offense of swindling, and his punishment fixed at two years confinement in the penitentiary.

Appellant moved to quash the indictment herein. Three grounds were laid in said motion which are as follows: "1. That it does not charge the defendant with any offense against the penal laws of the State of Texas. 2. That it does not appear from the face of the same that an offense against the laws was committed by the defendant. 3. Because the said indictment is repugnant, inconsistent, duplicitous and unintelligible and therefore does not charge the defendant with any offense against the penal laws of the State of Texas."

Such a motion presents nothing more than a general demurrer, and should not be sustained unless the indictment fails to state in substantial terms an offense against the laws of this State. The necessary elements of swindling have been often laid down. McDaniel v. State, 63 Texas Crim. Rep., 260. They are,—the obtaining of personal or movable property of another,—by false pretenses,—made by the accused,—with intent to defraud. Stripped of verbiage the indictment herein charges "that Byrd Jackson Cochrain . . . unlawfully de-

vising and intending to secure Five Thousand Dollars in money belonging to the Southwestern Life Insurance Company, a corporation, . . . did then and there unlawfully and fraudulently acquire possession of said money, from said corporation . . . by means of false and deceitful pretenses, devices and representations then and there unlawfully, knowingly and fraudulently made by him to said corporation, in this to-wit: . . . that said Cochrain had a life insurance policy in said company payable to his wife, and on March 10, 1919, while said policy was in force, said Cochrain pretended to be dead and falsely pretended and fraudulently represented to the Southwestern Life Insurance Company that he was dead, and by and through his wife and agent did fraudulently represent that he was dead, and that his said wife Ethel B. Cochrain had a right to collect said policy; and he, said Byrd Jackson Cochrain did then and there by means of said false pretense fraudulently induce said Southwestern Life Insurance Company to pay to Ethel B. Cochrain Five Thousand Dollars in money, and said Southwestern Life Insurance Company was thereby induced to part with and did part with title and possession of said money, and did deliver title and possession thereof to said Ethel B. Cochran. Whereas, in truth and in fact said Byrd Jackson Cochrain was not dead, and had not died during the life of said policy, and said Ethel B. Cochrain did not have the right to collect said policy or any part of same," etc. We think these allegations sufficient to charge a violation of the law, and that in the absence of any special exception directed at any particular part of said indictment, the overruling of said general demurrer presented no error.

This is a very remarkable case and accounts of it were made public in which same was called and became known as the "empty grave case." The State's contention, seemingly supported by the facts, is that appellant and his wife, with C. O. Hoggett and Wayne Ussery, two tenants on the farm of appellant, conspired together to fraudulently obtain the money of an insurance company, the fraud being based primarily upon the pretended death of appellant, who was the insured in a policy issued by said company. A substantial statement of the facts shows that on March 10, 1919, appellant "died" suddenly at his home at six o'clock in the morning. His wife and Hoggett were present. Ussery locates himself at the scene a short time after the pretended demise. News of the death was at once disseminated, Hoggett being the most active agent. A coffin was ordered, a grave prepared and other preparations made for the funeral, with the customary religious ceremonies and attendant surroundings. Those who came to the home of appellant on the day of said alleged death, found a grief-stricken widow in tears and lamentation. Apparently a select few were permitted to view the sheeted corpse laid out in the usual form awaiting a coming casket. The face was pale, the eyes half closed and no breathing was observed. These few who were permitted to view the alleged corpse were taken

into the front room, and Hoggett and Ussery alone prepared the coffin for its journey to the grave. After a religious service the funeral pro- cession departed, leaving the widow alone (?) at her home. Hoggett and Ussery accompanied the casket to its safe interment. Before leav- ing home the widow had asked that the coffin be not opened at the grave. The children of appellant were away from home when death came. They were not at the funeral. The widow stated that it was the re- quest of her dead husband that the children be not sent for. The next day after the funeral Hoggett drove away from the house of appel- lant in a wagon drawn by four mules belonging to appellant. A trailer- wagon was attached to the one driven by Hoggett. A wagon-sheet covered the trailer. Hoggett told two neighbors whom he met that he was going to the Wichita oil fields. Within a few days thereafter ap- pellant, Hoggett and Ussery turned up at Moran in Shackleford County, where they worked in an oil field for some time, appellant going under the name of Hancock and claiming to be a brother of Mrs. Cochrain, and stating that his sister's husband had died suddenly, leaving her with a lot of little children. A week after appellant's "death" his wife wrote the insurance company as follows: "My husband Byrd Jackson Cochrain is dead. He died March 10, 1919. His policy No. 28022. Amount $5,000. Yours truly, Ethel B. Cochrain." Later she filled out a formal proof of death sent her by the insurance company, therein again stating the fact of appellant's death. This was not sufficient, and same was supported by affidavits of Hoggett and Ussery and others, Hoggett asserting his presence when appellant died, and that he and Ussery prepared the body for burial, and that the body of ap- pellant was by them placed in the casket. Ussery swore in his affi- davit that he was called to appellant's home about an hour after his death and that he assisted Hoggett in preparing the body for burial, and that the two of them placed said body in the casket. Other affi- davits stated that the parties making same saw the casket and saw the body, and that same was that of appellant. On May 1, 1919, the $5,000 was paid by the insurance company to Mrs. Cochrain, $4,400 being de- posited to her credit in a bank at Aspermont, Stonewall County, $450 being applied to the payment of some notes of appellant held by said bank, and $150 in cash being then delivered to Mrs. Cochrain. A little later $3,000 was traced to a draft obtained by her from the bank at As- permont payable to a Fort Worth bank, which was e- dorsed "Ethel B. Cochrain by J. H. Cochrain," which endorsement was shown to be in appellant's handwriting. Three witnesses testified to seeing appellant in his house in Stonewall County in October, 1919, one of them being the father-in-law of appellant, who testified that he visited his daughter during said month and that while he was there appellant would remain in the house during the day time and go about under cover of night. In January, 1920, appellant, going under the name of J. H. Cochran, went out to Sterling County where he bought a ranch, paying $5,280

in cash on the purchase price and executing notes for the remainder. The deed was made to J. H. Cochrain. In February, 1920 appellant with his family moved to this ranch, where Mrs. Cochrain died in May of said year. Rumors and suspicions were circulating in Stonewall County where the alleged death took place, and in October, 1920 a group of men opened said grave and found therein a casket, empty, and with no signs of having been occupied. This indictment, the arrest and trial of appellant followed.

It is disclosed by the record in this case that there was no denial on the part of appellant of his pretense of death; in fact, in his sworn application for continuance he admitted and asserted such pretense in this regard, setting up at his reason therefor that he was under a ten thousand dollar bond for his appearance before the courts of New Mexico on a murder charge, and that his life had been threatened by influential friends of the alleged murdered men, and that believing if he appeared in response to said bond, his life would be endangered, he made the pretense of death to protect his bondsmen, and also to avoid the danger of death which might result if he went to New Mexico at the time called for his appearance by said bond. Nor was there any denial of the payment of the $5,000 by the insurance company to Mrs. Ethel B. Cochrain, based on their belief that appellant was dead.

The pretense of death being undenied, and the payment of the money of the insurance company to appellant's wife, also being undenied, there remained but the question of whether such pretense was fraudulent, and whether by means of same the insurance company was induced to part with and did part with the title and possession of their said money.

We have stated the main facts. In our opinion a conspiracy between four parties, viz: appellant, his wife, Hoggett and Ussery, was fully established, and in such case the acts and declarations of each of the co-conspirators done and made in pursuance of the common design, to-wit: the getting of said money, and prior to the obtaining of same, were admissible against appellant on his trial, whether same occurred in his presence or otherwise. The rule is too well settled to need citation of authorities. Vernon's C. C. P., pp. 648-643.

To this well known rule and that of principals may be referred most of the complaints of appellant upon this appeal. The question of principals is discussed at length in Middleton v. State, 86 Texas Crim. Rep., 307, 217 S. W. Rep., 1046. This doctrine is also applicable here. From the moment of the beginning of the acting together of the parties named, appellant was doing his part in the scheme of getting said money, his part being to pretend to be dead. When the money was delivered to and acquired by his wife, appellant was in concealment pretending to be dead. He was going under an assumed name when names were necessary. He was hiding in his own house in the daytime and coming out at night. He was pretending to be the brother of his own wife.

When two or more are acting together in the execution of a common design, the fact that only one of them is bodily present when the crime is consummated, does not prevent those who are absent, from being principals, if they are doing their parts at such time. Under the rules above discussed, and without stating needless details, we are of opinion that appellant's bills of exception Nos. 2, 7, 8, 10, 15, 21 and 23, show no error, same relating to acts and declarations of said co-conspirators prior to the payment of said money. That some of said matters were written documents and others oral statements, would not affect the question of their being within the rules mentioned.

A number of bills of exception were taken to the examination of the agent of the insurance company relating to the policy of insurance. There being no sort of contention that the $5,000 called for by said insurance policy upon the life of appellant, was not paid by the Southwestern Life Insurance Company, the alleged injured party in the instant transaction, to Mrs. Ethel B. Cochrain, wife of appellant, on May 1, 1920, we would hold that questions relating to a change of beneficiary, or the payment of premiums on such policy, or who approved such payment, are such matters as would be of no moment, and that errors asserted in regard thereto would be as to immaterial matters. This would dispose of bills of exception Nos. 3, 4, 5, 6 and 9. So also of the affidavits of undertaker Anderson which were sent to the insurance company supporting the claim of appellant's death, as set out in bills of exception Nos. 11 and 13.

Bill of exceptions No. 12 relates to the manner and circumstances of the payment of said money to Mrs. Cochrain; bill No. 16 relates to testimony of a banker as to his opinion that certain signatures, including the endorsement on the $3.000 draft mentioned above, were from his knowledge of appellant's handwriting, the signatures of appellant; bill No. 17 was reserved to a statement of said banker that part of the money obtained from said insurance company was contained in said $3.000 draft (the State contending that this draft was cashed by appellant); bill of exceptions No. 18 was to testimony of the banker that in the summer after the collection of said insurance money, certain notes against appellant came to the bank and were paid by Mrs. Cochrain; bill of exceptions No. 19 was also to the testimony of a banker that he was familiar with appellant's handwriting, and that in his opinion the endorsement of said $3,000 draft was made by appellant; bill of exceptions No. 20 was to the testimony of P. L. Anderson that he had signed a certain affidavit sent to the insurance company relative to the alleged death of appellant, at the request of Mrs. Cochrain; bill of exceptions No. 22 was to the testimony of a witness that he saw appellant in his house in Stonewall county in October, 1919; bill of exceptions No. 23 was to the testimony of witness Westbrook that in his opinion the endorsement on the $3.000 draft mentioned and the signature to a certain check, were in the same handwriting. In our opinion

a statement of the contents of these bills of exception obviate the necessity for any discussion of them at length. Matters relating to the receipt of the money, the obtaining of which was the basis of the alleged swindling, and the disposition of same by appellant or his wife were material circumstances bearing upon the fraudulent purpose and intent in the acquisition of said money. The matters pertaining to the $3,000 draft, showing that same was endorsed by appellant, were material for the same purpose. The affidavits and statements of witnesses and persons relating to the supposed death, were matters which could be of no possible harm to appellant in view of the fact that he did not deny the pretense of death, nor the obtaining of the money by his wife, but contented himself with contesting the sufficiency of the facts to show a fraudulent intent and acting together with her in what she did and said after pretended death.

We find ourselves unable to agree with appellant in any contention with regard to the insufficiency of the evidence in this case. The question as to whether his pretended death was for the purpose claimed by him, and in regard to which facts were elicited from a number of the witnesses upon cross-examination tending to show that appellant was under indictment in New Mexico, and that he had repeatedly said that he was afraid he would be killed, and showing the animosity of some of the New Mexico officers toward him,—and all other facts tending to support such defensive theory, were before the jury and fairly submitted to them for their decision by the charge of the court.

Appellant asked for a continuance because of the absence of one Latham and a Mr. and Mrs. Entzminger. We think the application lacking in merit. No diligence was shown as to Latham, and the facts stated as expected from the Entzmingers appear to us to be immaterial. If they had been present and testified that they suggested to Mrs. Cochrain to apply for the insurance money, or that they aided and assisted her in preparing her application therefor, this could in nowise affect the question of the fraud based upon the representation made by her to the insurance company that her husband was dead. It needs no iteration by us of the facts already stated to show irresistibly that Mrs. Cochrain was a party to the alleged fraudulent scheme. She was present in the house at the time of the alleged death of her husband. She was present when Ussery and Hoggett claimed to have prepared the body for burial. She was crying and taking on during the funeral ceremonies at the house. She asked that the casket be not opened. She stated that before her husband died he asked that the children be not sent for. She alone remained at the house when the empty casket was carried away. She wrote a letter a week later stating to the insurance company that he was dead. In the face of these tremendous facts it would be immaterial that anyone suggested to her that she prepare an application the core and pith of which was that her husband

was dead, a matter which she was compelled apparently, to know to be false.

A number of exceptions were taken to the charge of the trial court, many of which seem to be based upon an erroneous assumption that the act of one principal cannot be chargeable to another, and that appellant would not be in law held equally guilty for the representations made by his wife to the insurance company for the purpose of obtaining from them their money.

Finding no reversible error in the record, the judgment of the trial court will be affirmed.

*Affirmed.*

ON REHEARING

February 21, 1923.

HAWKINS, JUDGE.—Appellant complains at certain language in our opinion as subject to the interpretation that we are applying the rules of pleading in civil cases to indictments, thereby in effect holding that an indictment subject to attack by special exception, would nevertheless be held good in the absence thereof. If our language was so unhappily chosen as to be reasonably subject to such interpretation we now disclaim such to have been our intention. We intended to say only that the motion to quash the indictment was general in its terms, not pointing out specifically wherein it was claimed not to charge an offense, but that in our opinion the indictment did charge an offense, and was therefore not subject to the motion to quash. But it is urged that because the indictment alleged that appellant intended to swindle and defraud, and did swindle and defraud, a corporation, to-wit: The Southwestern Life Insurance Company, and alleged that the false representations were made to the Corporation, and did not name the particular persons or agents of the same to whom the said representations were made, that the indictment, for such failure, does not charge an offense, and that our former opinion is therefore erroneous and in conflict with Pruitt v. State, 83 Texas Crim. Rep., 148, 202 S. W. Rep., 81. Consideration of Article 24 of our Penal Code will aid in the solution of this question. It reads:

"Whenever any property or interest is intended to be protected by a provision of the penal law, and the general term 'person', or any other general term, is used to designate the party whose property it is intended to protect, the provision of such penal law, and the protection thereby given, shall extend to the property of the State, and of all public or private corporations."

Reference to Article 1421, P. C., defining the offense of swindling will reveal that the only "general term" used to designate the party whose property that article is designed to protect is "the party justly entitled to the same." A corporation may own its corporate name and hold title to property, and is "justly entitled thereto." We quote

from the opinion in Modica v. State, (No. 6868, Delivered February 14th, 1923) :

"In the fifth count, the owner was named as the Beaumont, Sour Lake and Western Railway Company, a corporation. There is no rule of law which inhibits the naming of a corporation as the owner in an indictment for theft. There is nothing in the cases of Green v. State, 199 S. W. Rep., 623; Hartman v. State, 213 S. W. Rep., 939; White v. State, 28 Texas Crim. Rep., 231, or other cases cited by appellant which is opposed to this rule. On the contrary, the cases of White v. State, 24 Texas Crim. App., 231; and Thurmond v. State, 30 Texas Crim. App., 539, cited by appellant recognize the sufficiency of an indictment naming the corporation as the owner. They suggest that a better practice would be to place the ownership in an individual. The practical value of this suggestion is referable to the proof rather than the averment, in that the proof of want of consent is much easier when the averment places the ownership in an individual. On this subject, see Osborne v. State, 245 S. W. Rep., 939; also Bishop's New Crim. Proc., Sec. 138; Cyc. of Law & Proc., Vol. 25, p. 95; Wharton's Crim. Law, Sec. 1180."

The authorities cited will, we think, demonstrate the soundness of the proposition announced. Where one obtains property belonging to a corporation by fraudulent representations made to a particular individual who has control of the property so acquired the better practice is always to allege the name of the person to whom the representations were made; but where the facts justify it, we believe it may properly be alleged that the representations were made to the corporation, and that such allegations charges an offense. It is true that corporations must act through individuals, and it is necessary for some person for the corporation to act upon the representations; but it does not follow that the representations must be directed to any particular person. As we understand the record in the instant case, all communications reporting appellant's death, the proof thereof and affidavits relating thereto, were all directed to the Southwestern Life Insurance Company. It was a matter of small concern to appellant into whose hands they ultimately fell, or what particular agent of the corporation passed upon them. The facts show they were acted on, not by one, but by many officers of the company. Upon this point we quote from the testimony of Mr. Mather:

"I had access to or possession of the policies of the company while acting in the official capacity of secretary for the Southwestern Life Insurance Company in the year 1919. As to who the party was who usually passed upon proof of death of claims under the policies, there are several, all of the officers pass on the proofs of death; they first come to me and are gone over carefully and then they are referred to the medical director and are by him gone over, then to the general at-

torney and from there back to the president and if approved by all these, they come back to me for final approval and payment."

We believe the facts shown by the foregoing evidence will demonstrate that if the proposition contended for by appellant,—that the indictment to be valid must allege the name of the person to whom the representations were made,—should be upheld, it would be practically impossible to draw a good indictment or secure a conviction under such a state of facts as is disclosed by this record. All the officers passed upon "proof of death claims." Would it be necessary to allege that the representations were made to all of them, the Secretary, the Medical Director, the General Attorney and the President? If not, then to which one? The law does not require impossible or impracticable things. In so far as Pruitt v. State, 83 Texas Crim. Rep., 148, 202 S. W. Rep., 81, contains expressions contrary to the views here expressed it is modified to that extent.

It is further contended in the motion for rehearing that the indictment is bad for failure to set out the written proof of death forwarded by appellant's wife to the Insurance Company, and that in the absence of such instrument in the indictment appellant's objection on that ground should have been sustained when it was offered in evidence. by the State. We find ourselves unable to agree to either proposition. Authorities cited in support of the contentions are White v. State, 3 Texas Crim. App., 605; Dwyer v. State, 24 Texas Crim. App., 123; Hardin v. State, 25 Texas Crim. App., 74; Ferguson v. State, 25 Texas Crim. App., 451; Salter v. State, 36 Texas Crim. Rep., 501; Lively v. State, 74 S. W. Rep., 321; Doxey v. State, 47 Texas Crim. Rep., 503. We deem is unnecessary to review them in detail. They announce the correct doctrine that when a written instrument is the basis of a swindle that instrument should be set out in the indictment, and that where the indictment upon its face reveals this to be true it will be held bad for the failure to incorporate it. What was the basis for the swindle in the instant case? The act on the part of appellant of simulating death? He was fraudulently representing to the world that he was dead and buried. The insurance policy as we find it in the record did not require written proof of death, and if so, the requirement could have been waived by the company. The beneficiary could have reported the (supposed) death of her husband by telephone, in person. or by private messenger to the company. She did write a letter so advising; later the proof of death was furnished. The Insurance Company, for some reason, not being satisfied sent an agent who had a personal interview with appellant's wife and others relative to appellant's supposed death; he also secured affidavits of two co-conspirators, and of some friends who had attended the fake funeral, and who appear to have been imposed upon as well as the Insurance Company. Could it be contended that the indictment should have set out all of the documents sent to the company or secured by it? What was the effect

of all of them? To cause the company to believe that appellant was dead, the false simulation of which, was to our minds, the basis of the whole swindle and conspiracy. If it had been alleged that the company relied on the written proof of death, then it could have been urged with plausibility that this was not true, because the company sent an agent to make further investigation, and secure additional affidavits. The letter, proof of death and various affidavits introduced over appellant's objection were only evidence pertinent in making out the State's case, and the means whereby the pretended death was established as a real event. It is never necessary to set out any part of the evidence in an indictment, unless a written document used as evidence be the basis of the offense charged. Not being required to set out the written instruments in the indictment we believe the objection to their introduction because not so averred was properly overruled. Presiding Judge Morrow agrees that the indictment was not obnoxious to the motion to quash, but is inclined to the view that there being no averment in the indictment that written representations entered into the offense, the admissibility of the written proof of death is doubtful, under the Rudy case, 81 Texas Crim. Rep., 272 and authorities there cited.

The motion for rehearing is overruled.

*Overruled.*