Clem McCLELLAND, Appellant,

v.

The STATE of Texas, Appellee.

No. 35837.

Court of Criminal Appeals of Texas.

June 29, 1963.

On Rehearing Dec. 11, 1963.

Second Rehearing Denied Jan. 15, 1964.

J. Edwin Smith, Jack Rawitscher, Smith & Lehmann, Houston, Skelton, Bowmer & Courtney, Byron Skelton, Jim D. Bowmer and Bob Burleson, Temple, for appellant.

Frank Briscoe, Dist. Atty., Houston, Samuel H. Robertson, Jr., Carl E. F. Dally and Gus Zgourides, Asst. Dist. Attys., Houston, and Leon B. Douglas, State's Atty., Austin, for the State.

DICE, Commissioner.

The conviction is under Art. 1538, Vernon's Ann.P.C., for conversion of an estate; the punishment, ten years.

Trial was in the 27th Judicial District Court of Bell County upon a change of venue from Harris County.

The indictment returned into Criminal District Court No. 5 of Harris County, omitting the formal parts, charged that:

"* * * on or about the 19th day of December, A.D. 1960, in said County and State, RICHARD H. PUTNEY was the administrator of the estate of Clara L. Currie, deceased, and as such had in his charge the estate, real, personal and mixed, of the said Clara L. Currie, and the said RICHARD H. PUTNEY and CLEM McCLELLAND, acting together as principals, did then and there unlawfully and with intent to defraud the heirs and distributees interested in such estate (the said heirs and distributees being to the Grand Jurors unknown), convert to their own use a part of the property of said estate, to-wit: ten thousand dollars in money, the same being then and there of the value of ten thousand dollars."

Upon the granting of a severance, appellant, Clem McClelland, was, by order of the court, tried first.

The state's proof shows that appellant was the duly elected, qualified, and acting Judge of the Probate Court of Harris County, Texas.

On September 10, 1960, Mrs. Clara L. Currie died intestate, in Harris County, leaving an estate consisting of both real and personal property of the appraised value of approximately $160,000.

On September 16, 1960, Richard H. Putney, appellant's co-indictee and a practicing attorney in the city of Houston, was appointed temporary administrator of Mrs. Currie's estate. His bond in the sum of $25,000 was approved by appellant.

On October 11, 1960, the administration was by appellant's order made permanent and the administrator's bond fixed at $5,000. On October 17, the said Richard H. Putney qualified as administrator of the estate by taking the oath and executing a bond that was approved by appellant in his official capacity.

Upon the trial, Putney was called as a witness by the state.

He testified that on December 19, 1960, he went to appellant's office and presented to him an application and order which he had prepared for a fee to be paid to him as administrator of the estate. Appellant, at such time, according to the witness, acted upon the application by inserting in the space left blank in the order for the amount of the fee the figure $10,000, stating that it was an unusual case and he (Putney) would need assistance with it. He further

testified that appellant stated to him that the fee would be divided between them, "an even split," and instructed him to deposit his share to the account of Tierra Grande, Inc., in the Citizens State Bank, of Houston. The witness stated that he proceeded directly from appellant's office to the Citizens State Bank, where he drew a check on the Currie estate for $10,000, of which he deposited $9,500 to his personal account and retained $500 in cash. He related that he then wrote a check for $5,-000 on his personal account, which he deposited in the bank to the account of Tierra Grande, Inc., and that he took a duplicate deposit slip for the $5,000 deposit to appellant's office, at which time he did not see him but left the deposit slip on his (appellant's) desk. The witness stated that he furnished appellant with a copy of the application and order for the attorney's fee and that the last time he saw the papers they were on appellant's desk. He also stated that he had no intention of investing in Tierra Grande, Inc., at the time of making the $5,000 deposit and that months later, in June, 1962, he received two stock certificates for 2,500 shares, each, in the corporation, from a man by the name of Bryson Martin. He further stated that at the time appellant instructed him to deposit his share in the Citizens State Bank he wrote on a slip of paper: "Tierra Grande, Inc., Citizens State Bank." The slip of paper was introduced in evidence and shown by a handwriting expert to be in appellant's handwriting.

Other evidence and testimony were offered by the state to corroborate the testimony of the accomplice witness Putney.

Appellant did not testify or call any witnesses in his behalf.

Appellant insists that if the evidence be sufficient to corroborate the accomplice, it is insufficient to sustain his conviction as a principal, but, viewed from the state's standpoint, shows him to have been an accomplice to the crime.

With this contention, we agree.

Articles 65–69, V.A.P.C., define who are principals in the commission of an offense.

Article 65, supra, provides that

"All persons are principals who are guilty of acting together in the commission of an offense."

The succeeding Articles 66–69, supra, prescribe the manner in which one may become a principal in the commission of a crime.

The six definitions prescribed by these articles have been set out by this court in the case of Middleton v. State, 86 Tex. Cr.R. 307, 217 S.W. 1046, as follows:

"(1) When A. actually commits the offense, but B. is present, knowing the unlawful intent, and aids by acts or encourages by words.

"(2) When A. actually commits the offense, but B. keeps watch, so as to prevent the interruption of A.

"(3) When A. is actually executing the unlawful act, and B. engages in procuring aid, arms, or means of any kind to assist while A. executes said unlawful act.

"(4) When A. actually commits the offense, but B., at the time of such commission, is endeavoring to secure the safety or concealment of A., or of A. and B.

"(5) When A. employs an innocent agent, or by indirect means causes the injury, or brings about the commission of the offense.

"(6) When A. advises or agrees to the commission of the offense, and is present when the same is committed, whether he aid or not."

Of the six ways in which one may be a principal to a crime, two require his presence at the time the crime is committed, and four make him a principal, though physically absent.

Under the statutory definitions of a principal, whether the person be present

or not when a crime is committed he must be actually doing something which associates him with the execution of the unlawful act at the very time it is done, to make him a principal. Schwartz v. State, 158 Tex.Cr.R. 171, 246 S.W.2d 174.

An accomplice is defined in Art. 70 of our Penal Code, as follows:

"An accomplice is one who is not present at the commission of an offense, but who, before the act is done, advises, commands or encourages another to commit the offense; or

"Who agrees with the principal offender to aid him in committing the offense, though he may not have given such aid; or,

"Who promises any reward, favor or other inducement, or threatens any injury in order to procure the commission of the offense; or,

"Who prepares arms or aid of any kind, prior to the commission of an offense for the purpose of assisting the principal in the execution of the same."

In the early case of Cook v. State, 14 Tex.App. 96, this court, in setting out the distinction between an accomplice and a principal, said:

"The acts constituting an accomplice are auxiliaries only, all of which may be and are performed by him anterior and as an inducement to the crime about to be committed (Penal Code, Arts. 79 to 85 inclusive); whilst the principal offender not only may perform some antecedent act in furtherance of the commission of the crime, but when it is actually committed is doing his part of the work assigned him in connection with the plan and furtherance of the common purpose, whether he be present where the main fact is to be accomplished or not."

In 2 Branch's Ann. P.C. 2d Ed., Sec. 710, at page 8, it is stated:

"If the defendant on trial was not present when the offense was committed and was doing nothing in aid of the common design when the offense was committed, he would not be a principal although the facts support the theory that he was both an accomplice and accessory, or a receiver of stolen property, or either."

In Hankamer v. State, 142 Tex.Cr.R. 23, 150 S.W.2d 794, it was held, in a prosecution under Art. 1538, supra, that *the conversion of funds of an estate was complete the moment the administrator formed the intent to use the money for his private personal use and did so use it.*

The facts in the instant case do not show that appellant was present when Putney withdrew the funds from the estate at the bank. Nor is there any proof that at the time Putney withdrew the funds appellant was doing any act in furtherance of their agreement to take the money from the estate.

Under the facts, appellant was not shown to be a principal to the crime of conversion of the estate but was shown to be merely an accomplice thereto.

In this state, an accomplice cannot legally be convicted of a felony as a principal. See: 2 Branch's P.C., Sec. 710, pages 7-9, and cases there cited.

Parnell v. State, 170 Tex.Cr.R., 30, 339 S.W.2d 49, relied upon by the state, is not here controlling, because, as shown in the opinion in the case, the accused was present at the time of the conversion of funds from the corporation.

Middleton v. State, supra, also relied upon by the state, is not here controlling, because in that case the accused was present at the time of the homicide and doing certain acts in furtherance of the conspiracy to kill the deceased.

By formal Bills of Exception Nos. 9, 10, and 11, appellant complains of the court's refusal, prior to ordering change of venue of the cause, to hear evidence in support of three motions filed by him to quash the indictment or to permit him to

perfect his bills of exception, by which he alleged that the indictment returned · by the grand jury was in violation of Art. 1, Sec. 10, of the Constitution of Texas, and of the Fifth and Fourteenth Amendments to the Constitution of the United States.

By such refusal, the trial court has deprived this court and the Supreme Court of the United States of the opportunity to review appellant's constitutional claim. In refusing to permit appellant to submit proof in support of the motions, the court erred. Rothschild v. State, 7 Tex.App. 519, and Juarez v. State, 102 Tex.Cr.R. 297, 277 S.W. 1091.

 Upon another trial, the state should not be permitted to prove that two of the original incorporators of Tierra Grande, Inc., did not appear before the notary public when they signed and acknowledged the articles of incorporation, as such acts were extraneous transactions which had no bearing upon the issues in the case. For the same reason, evidence should not be admitted to show that appellant, as probate judge, had authorized Putney to make certain loans from the estate to third parties and also authorized Putney to execute a check in the amount of $15,-000 to Southwest Equities Corporation. That portion of the administrator's final account showing certain old coins belonging to the estate as being in appellant's possession should not, upon timely and proper objection, be admitted in evidence before the jury. The court should also limit in his charge the jury's consideration of any evidence of extraneous offenses or transactions to the purpose for which it was admitted.

The judgment is reversed and the cause is remanded.

Opinion approved by the court.

MORRISON, Judge (concurring).

It has been suggested that the offense in question was committed when the order allowing the fee was allegedly signed by the judge. This position cannot be sustained because the alleged order does not appear to have been entered in the records of the Probate Court and there is an entire absence of any testimony that it was necessary or that it was ever used to effect the withdrawal of the monies in question; therefore, we cannot base an opinion upon it. Nor can the position be maintained that the money was not appropriated until it found its way into the possession of appellant because this statute could not be violated by appellant who was not a member of a class capable of committing this crime.

While the opinion of this Court may not meet with popular approval, the writer, at least, should not be subject to criticism because I pointed out as early as 1952, in an article which appears in Volume 1 of the Penal Code, that, as I saw it, the Legislature should abolish the distinction between accomplices and principals. More than ten years have passed since such article was published, and the Legislature has not seen fit to change the law.

Holt v. State, 144 Tex.Cr.R. 62, 160 S.W. 2d 944, can have no application here because the accused in that case was actively participating in the offense at the time it occurred, just as was Parnell, and neither case involved conversion of the funds of an estate as we have here and as we had in Hankamer v. State, supra.

Regardless of the charge, the fact remains that in all cases affirmed by this Court holding the accused to be a principal he was actually doing something at the time of the commission of the offense in the furtherance of its commission.

Whether or not the writer is sound in the above conclusions, three other reversible errors appear in this record, as pointed out in Judge Dice's opinion, with which I concur entirely.

WOODLEY, Presiding Judge (dissenting).

The offense charged was not one which the appellant, acting alone, could commit. He stands convicted for having acted to-

gether with Putney who was alleged and shown to be the Administrator of the Currie Estate. There was no allegation in the indictment to this effect but the evidence shows that the appellant was the Judge of the Probate Court who appointed Putney as administrator. As Probate Judge he was charged with the responsibility of seeing that Putney performed his duties, and shared with Putney the duty of preserving the property of the estate, that it might be delivered to those lawfully entitled to receive it and to no one else.

The indictment alleged that Putney and the appellant acting together as principals converted to their own use $10,000 in money which was part of the property of the Currie Estate. The court's charge properly instructed the jury to the effect that proof of conversion of $50 or more of the money would be sufficient.

The theory upon which the conclusion is reached that the Judge of the Probate Court was an accomplice rather than a principal to the conversion of a part of the property of the Currie Estate is that the offense was committed at the bank and was complete when the administrator "formed the intent to use the money for his private personal use and did so use it."

As to the $5000 belonging to the estate which, pursuant to the conspiracy, finally was appropriated to the use of the Probate Judge, there is no evidence or suggestion that the administrator at any time had the intent to use any part of this $5000 *for his private personal use, or that he did so use it.*

The contention that the appellant was not a principal in the commission of the offense is quite similar to that we overruled in Parnell v. State, 170 Tex.Cr.R. 30, 339 S.W.2d 49.

This is not a simple case where thieves break in and steal property that is in the possession of its owner. Here the door was open by reason of the positions of trust occupied by the conspirators and, in violation of such trust and of the statute, property of others entrusted to their care and custody was converted to their own use and benefit.

As in Parnell v. State, supra, the offense was not committed by a single act.

The money belonging to the Currie Estate was under the control of the administrator and was in his possession. He had the power to use or convert it, but no lawful right to do so without an order of the Judge of the Probate Court.

The administrator retained possession of the $5000 that was appropriated to the personal use of the appellant until it was so converted and appropriated as the appellant and the administrator had agreed.

There was evidence to the effect that the money deposited in the Tierra Grande Inc. account was withdrawn under the appellant's directions beginning the next day for his personal use or benefit.

The *intent* that the funds of the estate be converted to their own use was complete when the judge signed an order and the administrator accepted and acted upon it, the agreement being that $5000 of the amount would go to the judge. The check by which the $10,000 was withdrawn from the checking account of the estate and deposited to the personal checking account of the administrator shows on its face that the court's order was its basis. It bore the notation "One-half attorney's fees, one-half expenses of estate as per court order December 19, 1960."

The appellant made the fraudulent order which authorized the withdrawal under the unlawful conspiracy, and it was accepted. He directed the administrator where his $5000 was to be placed. He was present as that term is used in reference to the law of principals when the offense was committed.

Suppose that the administrator had had the $10,000 belonging to the estate in cash in his pocket and, having obtained the order, had left half of it at a hiding place designated by the judge where he later found it!

Could it be said that the judge was not a principal because he was not present at the

hiding place when the money was left there for him?

Stripped of the devious means used to cast an air of legitimacy upon the transaction and to conceal their crime and avoid its consequences, the supposed case is in essence the case before us.

Suppose that having drawn the $10,000 check, the administrator had obtained in cash the part which it was agreed would go to the appellant and had carried it to the appellant. Would this Court reverse because the appellant was not with the administrator when the $10,000 check was drawn?

As we said in Parnell v. State, supra:

"There is no settled mode in which appropriation of money or property of the principal by the officer authorized to receive and handle it must take place. It may occur in numberless ways, and the appropriation consummated in any manner capable of effecting it.

"In many classes of cases the question as to what acts are sufficient to show an appropriation is one of great difficulty.

"So long as the person entrusted with the money or property of another acts in accordance with the terms of his trust in reference thereto he is not guilty of embezzlement. He may deposit the money of his in the bank in his own name without being guilty of appropriating it. But a withdrawal by him for purposes of his own constitutes appropriation, 16 Tex.Jur. 70; or constitutes evidence of conversion. 16 Tex.Jur. 38, 39."

Holt v. State, 144 Tex.Cr.R. 62, 160 S.W. 2d 944, is a case where a conviction for theft by false pretext from one Goolsbee was affirmed, Holt having been present and participated when false representations were made to Goolsbee at Warren, in Tyler County, but was not present when his co-conspirator thereafter extracted $20,000 in money from Goolsbee at Beaumont, in Jefferson County.

This Court declined to follow the view that would narrow the commission of the crime to the very minute the money was delivered and said:

"We think the correct view is that the time of the crime of theft by false pretext extended from the beginning of the transactions when appellant first visited the Goolsbees until their loot was divided and that the place was in Warren, Tyler County, as well as near the hotel in Beaumont, Jefferson County."

Had the appellant's order been legally proper and genuine, the drawing and cashing of the $10,000 check would not have constituted conversion of property of the estate, or any other offense. It was, however, a fraudulent and unlawful order. Half of the money was to be and was converted to the use of the appellant. There remained the securing of the safety of the conspirators from detection by proper entry in the records of the order of the appellant as probate judge authorizing the pretended attorney's fees without disclosing that the money was to be shared equally with him, and the approval of the administrator's account.

It is true that the probate judge could not commit the offense alone. It is equally true that without the judge's participation the administrator could not have committed it with any degree of hope that he could escape detection and punishment, and would not have shared the money converted with the judge.

The parties acted together as principals, as did the parties in Parnell v. State. If the appellant was not present as that term is used in applying the law of principals, Parnell was not present when the conversion for which he was convicted as a principal occurred.

If the majority is correct in holding that the appellant was an accomplice to the conversion and not a principal, Parnell was not a principal though he was convicted as such and the conviction was affirmed.

For cases where the defendant whose conviction as a principal was affirmed, though he was not at the time in position to

have committed the offense himself and was doing nothing at the time the offense was committed by his co-conspirator other than waiting some distance away to carry out his part in the conspiracy, see White v. State, 154 Tex.Cr.R. 489, 228 S.W.2d 165; Gonzales v. State, Tex.Cr.App., 350 S.W.2d 553; Hill v. State, 135 Tex.Cr.R. 567, 121 S.W.2d 996; Stubblefield v. State, Tex.Cr. App., 334 S.W.2d 150.

The holding of the majority that the appellant was not a principal to the conversion will preclude another trial upon the indictment, hence there is no occasion to consider other claims of error.

I respectfully dissent.

## ON STATE'S MOTION FOR REHEARING

McDONALD, Judge.

Most of the opinion reversing this cause on original submission was devoted to the distinction between a principal and an accomplice. The majority opinion held that the appellant was not a principal; that the evidence was insufficient to sustain his conviction as such and viewed from the state's standpoint shows him to have been an accomplice to the crime.

The writer approved the opinion written by Judge Dice on original submission and wrote no opinion thereon. Judge Morrison concurred and Presiding Judge Woodley dissented. I now recede from my original position so far as the appellant being a principal is concerned.

█ I think that appellant was a principal, rather than an accomplice. I do not agree with Presiding Judge Woodley that Parnell's case, 170 Tex.Cr.R. 30, 339 S.W.2d 49, cited in his dissenting opinion is in point with the case at bar. I say this for the reason that Parnell was present during the course of the conversion. He was present at the Executive Committee Meeting on June 8th, and at the stockholders meeting on August 15th.

I also disclaim Hankamer's case, 142 Tex. Cr.R. 23, 150 S.W.2d 794, cited in our original opinion as authority to support my views therein expressed. Hankamer was an administrator "converting on his own", without any assistance from the county or probate judge. The portion excerpted from his case and cited in the original opinion follows a discussion in his case of the time of various conversions to refute a claim advanced by Hankamer that limitation had run on his offenses, if any. This Court said:

"He had unquestionably converted the $66.55 to his own use and benefit before he ever made any payment of the premium on the bonds. The conversion was complete the moment he formed the intent to use the money for his private personal use and *did so use it.*"

No other person was present, nor was any action on the part of any other person required for Hankamer to complete the conversion in his case. He was unlike Putney, the co-principal and administrator in this cause. He was acting on his own. Putney was acting with the appellant, or the appellant with him, they were acting together, as I shall hereinafter set forth. The writer has carefully reviewed all of the cases cited by the State and the appellant, along with numerous other cases dealing with the law of principals and accomplices. Holt v. State, 144 Tex.Cr.R. 62, 160 S.W.2d 944, cited by Presiding Judge Woodley in his dissenting opinion, supports the view that I now entertain. The writer desires to direct attention to Judge Graves' concurring opinion in Holt, supra, in which he cites numerous cases, among them being: Middleton v. State, 86 Tex.Cr.R. 307, 217 S.W. 1046 and Mason v. State, 31 Tex.Cr.R. 306, 20 S.W. 564, which Judge Graves refers to as being "the true doctrine that should be followed" so far as the law of principals is concerned. Judge Simkins wrote the unanimous opinion in Mason's case. I shall not here lengthen this opinion by quoting from either case, but I do feel that both cases support my position. Whether Put-

ney needed the Order from appellant, allowing the $10,000.00 attorney's fee, isn't clear. Appellant did not exercise his statutory duty to conserve and preserve the funds of the estate, he passively sat by and allowed Putney to withdraw the money. The appellant set Putney in motion to perpetrate the offense just as effectively as Middleton did Osment in the murder case, Middleton, supra. It is true that Middleton struck no blow with the hammer, nor did appellant even touch the pen when Putney cashed the check at the bank, and yet, the two cases are parallel.

Cochrain v. State, 93 Tex.Cr.R. 483, 248 S.W. 43, involved an appellant whose part in the transaction was "to pretend to be dead", which he did. In this case Southwestern Life Insurance Company paid out $5,000.00 to Cochrain's wife, based upon a a conspiracy that he had died. He, of course, was not present when the money was paid to his wife. He played "dead" and the appellant herein played like Putney was an honest administrator, and he sat back and silently allowed Putney to convert at least $5,000.00 from the Currie estate and place it on deposit for the use of appellant, or in a bank account controlled by appellant. It is quite coincidental that Cochrain's case is even identical to the case at bar as to the sum of money involved, as well as being authority for my position.

■ The writer feels that we were in error in holding in our original opinion that the trial Court erred in refusing to allow appellant, prior to ordering a change of venue of the cause, to adduce evidence in support of three motions filed by him to quash the indictment or to permit him to perfect his bills of exception, by which he alleged that the indictment returned by the grand jury was in violation of Art. 1, Sec. 10, of the Constitution of Texas, Vernon's Ann.St., and of the Fifth and Fourteenth Amendments to the Constitution of the United States, which complained of errors appellant has brought forward by formal Bills of Exception Nos. 9, 10, and 11. Art. 1, Sec. 10, Constitution of Texas protects the rights of an accused in all criminal prosecutions. It does not encompass grand jury action. Rothschild v. State, 7 Tex. App. 519, cited in our original opinion was a case involving an allegation that an unauthorized person was present during the deliberations of the grand jury. The case was reversed because the trial court refused to permit proof by the appellant on this issue. The record in the instant case discloses that appellant was permitted to make proof herein on his allegation that unauthorized persons were present at the time the grand jury deliberated. The trial court met the requirement of Rothschild, and that case does not support our original view, from which I now retreat. In Juarez v. State, 102 Tex. Cr.R. 297, 277 S.W. 1091, the trial court refused to permit appellant to make proof that he had been purposely discriminated against in the selection of the grand jury which returned the indictments against him. Appellant herein makes no such claim. (The trial court here did refuse to permit appellant to make an inquiry into what evidence the grand jury considered at the time of the return of the indictment.) It has long been the law that the character of testimony or the quantum of proof had before the grand jury cannot be inquired into on a motion to quash the indictment. Article 506, Vernon's Ann.C.C.P., Note 6, citing numerous cases. The foregoing article of our Code of Criminal Procedure does not provide for quashing an indictment against a Negro because it was found by a grand jury from which all persons of the African race had been excluded because of their race or color. Yet such a procedure to quash has been held to be a timely mode of presenting the objection, under the Constitution and laws of the United States, as set forth by appellant's able attorneys. However, I do not think these racial discriminatory cases cited by appellant are in point here.

The case of Rideau v. State of Louisiana, 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663, cited by appellant, is not in point as it is bottomed on the refusal of the trial court to grant a change of venue. We have no

such question before us in the case at bar. The trial court changed the venue of appellant's case. He was tried in Belton, Texas, approximately 200 miles from Houston, Texas, where appellant alleges the complained of publicity took place.

I shall now direct my attention to what I regard as the reversible errors in this case. My views and my position are that the State's Motion for Rehearing should be denied. In this court's original opinion by the majority, Judge Dice, speaking for the court, said, "Upon another trial, the state should not be permitted to prove that two of the original incorporators of Tierra Grande, Inc., did not appear before the notary public when they signed and acknowledged the articles of incorporation, as such acts were extraneous transactions which had no bearing upon the issues in the case. For the same reason, evidence should not be admitted to show that appellant, as probate judge, had authorized Putney to make certain loans from the estate to third parties and also authorized Putney to execute a check in the amount of $15,000 to Southwest Equities Corporation. That portion of the administrator's final account showing certain old coins belonging to the estate as being in appellant's possession should not, upon timely and proper objection, be admitted in evidence before the jury. The court should also limit in his charge the jury's consideration of any evidence of extraneous offenses or transactions to the purpose for which it was admitted."

Further elaboration as to these matters was not deemed necessary due to the court's disposition of this cause. I feel it will be desirable to elaborate and clarify my position through a more labored discussion of the law applicable and direct attention to the errors I regard as reversible.

The indictment returned on June 20, 1962, alleges that the appellant on or about December 19, 1960, did unlawfully, with intent to defraud, convert to his own use $10,000 in money from and belonging to the Estate of Clara L. Currie.

It is undisputed that the state relies for a conviction upon the withdrawal of $10,000 by Putney's check dated December 19, 1960, drawn on and paid out of the Currie Estate as authorized by the appellant, and the unlawful conversion thereof of any sum of money of over fifty dollars. The state adopted this view in briefing this case.

To support the allegations of the indictment the state called the witness, Putney, who testified on direct examination, that he presented an application to appellant, as Probate Judge, for an order approving attorney's fees in the sum of $10,000; that appellant signed the order approving the application but said instruments were left on the desk of the Judge (appellant) and they were never produced at the trial. The bank records reveal that on presentation by Putney of the $10,000 check, he received $500 in money, deposited $9,500 to his personal account, and then drew a $5,000 check on his personal account which he deposited to the account of Tierra Grande, Inc., shown to be controlled by appellant, and that this money was withdrawn for the benefit of appellant.

On cross-examination, by the appellant of Putney, he testified that he had made approximately 50 odd withdrawals of money from the Currie Estate without a court order from the appellant, aggregating in excess of $25,000, *which he had converted to his own use and had shared none of the proceeds with the appellant.*

The state on re-direct examination, over appellant's objection, introduced evidence of another withdrawal by Putney, pursuant to appellant's oral instruction, of $15,000 on January 24, 1961, for the purchase of stock in the Southwest Equities Corporation.

For the admission in evidence of the said $15,000 stock purchase the District Attorney of Harris County argued to the trial Judge that:

"We think it is in response to the cross-examination with reference to the defendant's knowledge of withdrawals from the estate without a written or-

der. This is such a transaction. My position is that it is admissible to rebut—that all of the withdrawals that were made without an order were made unknown to the defendant".

Thus, it was the theory of the state that it should be allowed to offer evidence in rebuttal, showing that Putney acted in other transactions upon an oral court order by appellant, other than the single order approving the attorney's fee of $10,000. Over timely and proper objection, the evidence was admitted.

In addition to the $15,000 stock purchase, the state proffered the testimony of Putney about a prospectus and the notation appellant had made on it. In the absence of the jury the testimony shows that Putney had seen a prospectus of the Southwest Equities Corporation, and that appellant had written on this prospectus: "Mrs. Currie subscribed for 1,000 shares." After objection had been made, the Court then stated that he would not admit the prospectus, but he would permit the notation "which is ascribed to the defendant, that Mrs. Currie subscribed to 1,000 shares." The Court stated: "The Court understands that the purpose of the State here is to show that the witness had purported oral authority in other transactions other than the one involved". The Harris County District Attorney then stated: "Yes, and that such withdrawals were made to the knowledge of the defendant, without proper order of the Court." Then, in the presence of the jury, the witness, Putney, was asked to identify an exhibit, which *he stated was a prospectus of Southwest Equities Corporation,* that *he had seen it in Judge McClelland's office,* that McClelland instructed him to buy the stock and *that McClelland made the notation on the prospectus: "Mrs. Currie subscribed to 1,000 shares";* that Putney then withdrew the $15,000.00 from the Currie estate and invested it in stock of the Southwest Equities Corporation, pursuant to McClelland's oral instructions. The Court then admitted the portion of the prospectus bearing the above-quoted notation.

Following the withdrawal of the $15,000 from the Currie Estate for the purchase of stock on January 24, 1961, proof was made by the State that there were two substantial withdrawals of money totaling over $100,000 from the Currie Estate in connection with two loans made by Putney. One, in the sum of $40,000.00 to Bayou Production Company on March 28, 1961, and the other in the amount of $61,000.00 to C. W. Calhoun, Trustee, on June 16, 1961, both transactions clearly showing no conversion on the part of the appellant, but they gave a strong inference of wrongdoing on his part and no doubt aroused suspicion on the part of the jury, as the District Attorney asked the question: "Does the Probate Code specifically provide for loans to be made from the estates of decedents?", which, although unanswered, no doubt caused appellant material harm by leaving an inference that the appellant had violated the law under the Probate Code. These were loans to third parties. However, I observe that the state had previously on direct examination, adduced from the witness, Putney, that following the events that he described December 19, 1960, that he subsequently made various withdrawals from the account of Clara L. Currie on many occasions without a court order or without permission of the court and that he approximated to the best of his recollection that these withdrawals amounted to $25,800.00 and some odd cents.

I do not think that the evidence was admissible. The State was actually attempting to bolster or to impeach their own witness. Had they been correctly desirous of introducing this testimony to rebut, then they were rebutting their own witness, which amounts to nothing more than impeaching one's own witness. They did not show surprise nor hostility on the part of the witness, Putney, and I think this evidence was clearly inadmissible. Neither do I think that this testimony was admissible to bolster the state's witness. The state saw fit to adduce upon direct examination testimony which they later regarded as un-

favorable to them, and yet they wanted to bolster their own witness with some transactions highly prejudicial to the appellant. The state also was not only getting before the jury evidence which it contended would rebut, but also "that such withdrawals were made to the *knowledge of the defendant*, without proper order of the Court." If I correctly interpret the view of the state, it was their position that the stock purchased from Southwest Equities Corporation and the two loans, all having been made with an order from the Probate Judge (the appellant), and he having knowledge of such transactions, for he ordered them made, would also refute Putney's testimony that he converted over $25,000.00 to his own use, sharing none of it with appellant. It would in effect charge appellant with knowledge of Putney's misapplications or conversions on 50 odd different occasions. In the face of Putney's testimony about his various independent acts of conversion, I see no similarity in these three transactions, but I do see appellant being greatly prejudiced by this testimony. Here is an estate shown by the record to be worth approximately $160,-000.00 in its entirety. Testimony was then admitted showing three transactions, totaling $116,000.00 and the one transaction for $10,000.00 for which appellant was on trial. I think the testimony about these transactions no doubt caused the jury to feel that appellant was probably, along with Putney, out to steal the entire estate and that said testimony was highly prejudicial and inflammatory to appellant's rights to a fair and impartial trial and that it caused the jury to render a verdict for a greater punishment than they would have rendered absent this prejudicial evidence. Viewing the three transactions totaling $116,000.00 in the suspicious light that the jury no doubt saw them, they probably decided that appellant was just a petty thief to only be taking $10,000.00 as charged; so the additional evidence of the one hundred thousand dollars plus transactions removed any doubt from their minds as to appellant's guilt. The jury probably computed

that here was a Probate Judge, with his co-principal, who stole $126,000.00 in four transactions, or about three-fourths of the entire estate of $160,000.00.

Assuming for the sake of argument that the evidence of these three transactions was admissible to prove either intent, system or identity, or in developing the res gestae, so as to bring it within one of the exceptions to the general rule of admissibility as to extraneous offenses or transactions, the trial court imposed no limitations upon his instructions to the jury as to these transactions, over appellant's timely objection. For this error alone the cause should be reversed.

For the reasons stated, the State's Motion for Rehearing is overruled.

MORRISON, Judge (concurring).

Remaining convinced of the soundness of the original opinion holding the appellant to be an accomplice rather than a principal and my concurrence therewith, I would add only the following.

While I agree with the result, I cannot bring myself to agree with the assumption not supported by evidence that appellant's proof as to the unconstitutionality of the grand jury's action must necessarily have come from what occurred within the grand jury room and not from the holding of the highly publicized court of inquiry. We, as a Court, have no authority to make such an assumption against an accused, or to speculate as to the nature or quality of the proof which might have been adduced had the court permitted it. I further take issue with my brother McDonald in his statement that the constitutional guarantees do not encompass grand jury action.

I viewed Judge DICE's discussion of the proof of extraneous offenses as grounds for reversal as will be seen from my original concurrence herein. I concur in the overruling of the State's motion for rehearing.

WOODLEY, Presiding Judge (dissenting).

It is regrettable that the views of the Judges of this Court as to the controlling principles of law and their application are so divergent that the numerous and lengthy opinions herein will be of little value as legal precedent or as authority in any case other than that before the Court.

The majority opinion on original submission reversed this conviction upon the holding that the evidence showed appellant's guilt as an accomplice, but not as a principal.

■ Judge McDONALD's opinion on rehearing states his present view that such holding was wrong and that the evidence is sufficient to sustain the conviction of the appellant as a principal. Thus, the conclusion that the evidence is sufficient to sustain appellant's conviction as a principal becomes the majority holding.

■ The writer concurs in the conclusion of Judge McDONALD that the court in Harris County did not err in refusing to hear testimony regarding what evidence the grand jury considered in returning the indictment against the appellant.

This holding of the majority leaves only the supposed errors on the trial in Bell County which were not relied upon in Judge DICE's opinion as ground for reversal, but were the basis of the admonition to the trial court not to admit certain evidence and to limit certain evidence "upon another trial."

On original submission there was no occasion for the Court to consider these claims of error because another trial upon the indictment had been precluded by the holding that the appellant was not a principal, as the indictment charged.

The evidence which Judge McDONALD holds inadmissible as showing extraneous offenses relates to property belonging to the Currie Estate and the actions of the appellant as County Judge, and of the administrator Putney in regard thereto. This evidence was admissible. If it showed or tended to show any offense it was not an extraneous offense but the offense charged in the indictment, namely the conversion of property belonging to the Currie Estate by the administrator, the appellant acting with him as a principal.

It is not controlling that the state elected to stand upon the conversion of $50 or more of the proceeds of the $10,000 check. The allegations of the indictment, not the case submitted to the jury, determines what evidence is admissible and what is extraneous.

It is incorrect to assume that the state was limited by the indictment to the proceeds of the $10,000 check drawn on the account of the Currie Estate. The court properly charged the jury that proof of conversion of $50 or more belonging to the estate would be sufficient. In the jury's absence the trial judge stated, in ruling upon an objection: "Gentlemen, the indictment alleges the theft of $10,000 from the estate. It does not say what $10,000 was taken from the estate."

The first reference to the Southwest Equities Corporation transaction was when Putney testified on cross-examination that he had been indicted "on the $15,000 Southwest Equities check." Thereafter the state offered the prospectus and proof regarding the appellant's connection with Southwest Equities Corporation, but the careful trial judge ruling in the absence of the jury admitted only the notation ascribed to the appellant, the check and the testimony of Putney that the appellant told him to issue it but no court order was obtained.

The first reference to a loan made from the Currie Estate was also on Putney's cross-examination regarding a transfer of funds belonging to the estate from a Savings and Loan Association to a checking

acccunt when Putney testified: "That was at the time that we were making the loan for the estate."

Also the final account of Putney was introduced as State's Exhibit S–26 wherein the loans and Southwest Equities Corporation $15,000 investment are listed. Also Putney testified on cross-examination about the loans and interest thereon.

The complained of testimony went no further than to show that loans were authorized and made for the Currie Estate.

In view of the above, appellant has no ground to complain.

Much has been written about Putney's testimony elicited by the defense as to withdrawals he made and converted to his own use which the appellant did not authorize and about which he was not advised.

To make this part of the evidence complete attention is directed to Putney's explanation made and repeated that he drew the money in violation of the law, knowingly, in anticipation of fees and made false statements on the checks "simply to assure myself that I would not have to split any more fees * * * I did not intend to divide any more fees."

Also, the record shows that evidence was elicited by the defense showing that Putney, with the knowledge of the appellant, sold $40,278.24 worth of Texaco Inc. stock belonging to the Currie Estate a month before he obtained a court order to do so. And on his cross-examination Putney testified that he sold U.S. Treasury Bonds belonging to the Currie Estate with the knowledge of the appellant but without obtaining a court order.

I see no error in the failure of the court to limit the evidence mentioned in his charge.

I respectfully dissent from the overruling of the State's motion for rehearing.