Jerry S. O'BRIEN, Appellant,

v.

The STATE of Texas, Appellee.

No. 36594.

Court of Criminal Appeals of Texas.

March 4, 1964.

Rehearing Denied April 15, 1964.

Bernard A. Golding, Houston, for appellant.

Frank Briscoe, Dist. Atty., Samuel H. Robertson, Jr., Carl E. F. Dally and Gus J. Zgourides, Asst. Dist. Attys., Houston, and Leon B. Douglas, State's Atty., Austin, for the State.

McDONALD, Judge.

The appellant was convicted of the offense of Conversion from an Estate, and his penalty was assessed at ten years' confinement in the State Penitentiary.

Appellant was jointly indicted as a principal with Clem McClelland, the former Probate Judge of Harris County. After McClelland had moved the Court to sever, to place O'Brien on trial first, and for a change of venue, the severance was granted and the appellant was tried alone.

Gordon Robert von Stroh, a non-resident of Texas, while in police custody committed suicide. After the death of von Stroh, Captain Cecil Priest, of the Houston Police Department, had a telephone conversation with McClelland, the Probate Judge, regarding the property of the deceased. McClelland informed Captain Priest that he would send the appellant to take charge of the deceased's property and told him it would be unnecessary for an attorney to be employed by the deceased's family.

Mr. Russell Dahl, a brother-in-law of von Stroh, came to Houston from Oregon and first talked with Captain Priest and, thereafter, went to the courthouse to see Judge McClelland. Dahl had a conversation with Judge McClelland in his office. Following that conversation, Dahl met with the appellant. He did not recall whether he or the Judge first contacted the appellant, but their meeting was a result of the conversation with McClelland. Dahl met with the appellant on at least two occasions before he left Houston, and appellant was informed that Dahl had paid the funeral expenses of the deceased and that he had a claim against the estate for the same.

After returning to Oregon, Mr. Dahl corresponded and had telephone conversations with the appellant concerning the von Stroh estate. In one of the letters, dated October 19, 1959, from appellant to Dahl, appellant advised "I cannot send you nor anyone any of Gordon's belongings without the Court's okeh, and my suggestion is that we sit steady in the boat and wait about a year, at which time the accounting will be due in the court; and if I have been successful in getting enough money together, I will ask that your claim for funeral expenses and other monies you have been out are reimbursed to you". In a subsequent letter, dated October 25, 1960, the appellant informed Dahl that "According to law when this estate is closed, I will be forced to turn over said estate to the executor according to letters testamentary". The quoted sentence had reference to the fact that letters testamentary had been issued in California in the estate of Gordon Robert von Stroh.

Dahl's claim for funeral expenses was not paid by the appellant as administrator of the estate, nor anyone else.

The probate records of the estate, introduced into evidence, revealed that on the 23rd day of March, 1960, the appellant made application to the Probate Court, and in the application it was recited that an insurance policy in the amount of $3,500.00 had been collected, and that the funds on hand in the estate were $3,618.47. The appellant then moved the Court to pay temporary admin-

istrator's fee of $2,000.00 and an attorney's fee of $500.00. The Court's order, pursuant to the application, authorized the payment of $2,000.00 as temporary administrator's fee and $500.00 as attorney's fee out of the funds of the estate.

Records from the bank account of the estate in the Citizens State Bank reflected that on March 24, 1960, two checks, one in the amount of $2,000.00 and one in the amount of $500.00, were drawn on the account by the appellant. The $2,000.00 check payable to appellant bore the notation, "Temp. adm. fees per court order #67899". The check for $500.00 payable to appellant bore the notation, "Attorney's fees per court order #67899". The balance of the account remaining after these withdrawals was $1,118.47. Subsequent withdrawals to pay claims of the estate reduced the principal on deposit to $283.65.

The records of the same bank reflect that the appellant had a personal account there and that the check for $2,000.00, drawn as a temporary administrator's fee, was deposited into that account.

The appellant, testifying in his own behalf, said he was not a lawyer and not licensed to practice law. He had been acquainted with Judge McClelland since McClelland graduated from the University of Texas in about 1947 or 1948. Judge McClelland had suggested to him that he become the temporary administrator in the von Stroh estate. He did not draft the order appointing him temporary administrator. It was first seen by him in Judge McClelland's office at the courthouse.

Appellant denied that he had ever shared or given any part of the fees of any estate to Judge McClelland. Appellant said that he had not had any business transactions with McClelland. He was then confronted with the fact that a check had been drawn upon his account, made payable to McClelland in the amount of $500.00, on the day after he received $2,500.00 from the von Stroh estate. He then admitted the payment but his explanation was that Mc-

Clelland had helped him with tax matters concerned with the drilling of an oil well, and that the $500.00 payment was made for the services rendered by McClelland. The original copy of that check was exhibited to him by his counsel, and he said it bore the notation "Legal services oil & insurance matters". Thereafter, on recross-examination it was shown that the check did not have this notation on it when it was negotiated at the bank. The words "oil &" had been placed on the original check after it was negotiated at the bank.

In support of the appellant's explanation, he introduced a statement which he said was presented to him by Judge McClelland for the services. (Defendant's Exhibit No. 1). Under cross-examination, he denied that the statement was prepared recently in order to cover and explain the transaction of the payment of $500.00 to McClelland. However, he admitted that the statement could have been made on his typewriter at his house.

The appellant called witnesses who testified his reputation for truth and veracity and for being a law-abiding citizen in the community was good.

There were no objections to the Court's charge. The appellant did not submit to the Court any requested instructions. No formal bills of exception have been brought forward with the record.

■ The evidence reveals that the total assets of the estate amounted to approximately $3,700.00. Approximately $900.00 in court costs and claims were paid. The appellant had knowledge of the claim for funeral expenses which had the highest legal priority, and it was not paid. The administrator's fee of $2,000.00 and the attorney's fee for $500.00 nearly depleted the estate. We observe that it was far from reasonable under the circumstances. O'Brien was not an attorney and not entitled to attorney fees. Judge McClelland was paid attorney's fees. The jury did not choose to believe the explanation of the

appellant. The evidence is amply sufficient to show the guilt of appellant as a principal, along with Clem McClelland, of the conversion from the estate of Gordon Robert von Stroh.

During the course of the trial, the custodian of the probate records of Harris County, Texas, identified applications and orders of the probate court in twenty-eight other estates in which appellant was the legal representative of the estate. These records showed that in each case the appellant was awarded attorney's fees by the Probate Judge. Representative of such cases was that of Ben Ernest Waite, deceased. The records revealed that the total assets of that estate amounted to $353.06. There were disbursements from the estate by the appellant, as a temporary administrator, of $10.00 for a bond premium and $30.-00 for court costs. The remaining balance was $313.06. The appellant applied to the Court, and an order granting the same was entered for attorney's fees in the amount of $156.53 and temporary administrator's fees in the amount of $156.53. The two payments entirely depleted the assets of the estate. It was further shown that no attorney was actually appointed to represent the appellant as temporary administrator in that estate.

It is urged by appellant that the trial court erred in admitting this evidence of other offenses or transactions.

The record reflects that appellant's defensive theory in the trial was lack of intent or knowledge that he was participating in any wrongful conduct. The charge of the court limiting the jury's consideration of said extraneous offenses has been approved by this Court in Curry v. State, 169 Tex.Cr.R. 195, 333 S.W.2d 375.

■ The general rule is stated in 78 A.L.R.2d 1364, "Evidence of other similar offenses tends to characterize an act which might have been committed innocently or under mistake as having been knowingly committed with unlawful intent, since rep-etition lessens the probability of mistake and points out intention in doing the act charged." State v. Jansen, 207 Minn. 250, 290 N.W. 557.

Texas follows the general rule and evidence can be offered as direct testimony, and in a case of circumstantial evidence where intent is an issue, but it more often is permitted to come in in the form of rebuttal evidence after the appellant has testified or offered a defense wherein he has stated that he did not intend to do the act. Parnell v. State, 166 Tex.Cr.R. 239, 312 S.W.2d 506; Fite v. State, 163 Tex.Cr.R. 279, 290 S.W.2d 897.

Commission of other crimes or transactions may be shown only when the intent accompanying the act is *equivocal*, or where intent otherwise becomes an issue in the trial. See Sherman v. State, 124 Tex.Cr.R. 273, 62 S.W.2d 146, where the defensive theory was that appellant had no intention at the time he received the check, to appropriate it to his own use, and he attempted to show his good faith in dealing with the property of the injured party. In affirming the conviction, this court stated, "When an extraneous crime, or other transaction, tends to show intent when intent is in issue, proof of same is admissible." The court limited the testimony to the question of intent. The same result was reached in Vaughn v. State, 138 Tex.Cr.R. 62, 134 S.W.2d 290; Walker v. State, 139 Tex.Cr.R. 623, 141 S.W.2d 618; Parish v. State, 145 Tex.Cr.R. 117, 165 S.W.2d 748; Vernon v. State, Tex.Cr.App., 338 S.W.2d 728; Hankamer v. State, 142 Tex.Cr.R. 23, 150 S.W.2d 794; Cage v. State, 167 Tex.Cr.R. 355, 320 S.W.2d 364.

In Young v. State, 159 Tex.Cr.R. 164, 261 S.W.2d 836, relied upon by appellant, there was no charge limiting the testimony as to the extraneous offenses. Also, in that case, intent was not deemed to have been in issue.

■ In proving appellant's guilt in the instant case, it was incumbent upon the

state to prove intent in the transaction. Appellant's testimony saying "I didn't know I was violating the law", together with his plea of not guilty raised the issue of intent in the transactions.

Thus, the admission of the twenty-eight other similar offenses or transactions, properly limited by the Court's instruction to the jury, evidences system and was useable by the jury in establishing appellant's intent in converting the estate in the case at bar.

Appellant's further contention that intent was not proven is without merit. See Sims v. State, 169 Tex.Cr.R. 466, 334 S.W.2d 818, where evidence of other similar offenses or transactions was found to be sufficient in proving intent to defraud.

The evidence is sufficient to support the jury's verdict and we find no reversible error.

The judgment is affirmed.