**Clem McCLELLAND, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 37380.

Court of Criminal Appeals of Texas.

Jan. 6, 1965.

Rehearing Denied March 10, 1965.

Second Motion for Rehearing Denied April 21, 1965.

J. Edwin Smith and Jack J. Rawitscher, Houston, Perry L. Jones, Austin, for appellant.

Frank Briscoe, Dist. Atty., Samuel H. Robertson, Jr., Carl E. F. Dally and Gus

J. Zgourides, Asst. Dist. Attys., Houston, Tom Blackwell, Dist. Atty., Austin, and Leon B. Douglas, State's Atty., Austin, for the State.

McDONALD, Presiding Judge.

The appellant was convicted of the offense of Conversion from an Estate, and his penalty was assessed at 10 years confinement in the State Penitentiary.

The appellant, the former Probate Judge of Harris County, Texas, was jointly indicted with Jerry S. O'Brien. A severance having been granted, O'Brien's case was tried in Harris County where he was convicted and the conviction was upheld by this Court on appeal, 376 S.W.2d 833. The appellant was granted a change of venue and was tried before the Honorable Mace B. Thurman, Judge of the 147th District Court, of Travis County, Texas.

Gordon Robert Von Stroh, a nonresident of Texas, while in police custody, committed suicide. After the death of Von Stroh, Captain Cecil Priest, of the Houston Police Department, had a telephone conversation with the appellant McClelland, who was then Probate Judge, to determine what should be done with the property of Von Stroh. As a result of the telephone conversation, the appellant sent Jerry S. O'Brien to the Police Department to take charge and possession of the property of the deceased. McClelland informed Captain Priest that the family of the decedent, who lived out of the state of Texas, would not need to employ an attorney to care for matters of Von Stroh's estate. Jerry S. O'Brien who was appointed as temporary administrator of the decedent's estate, was not a lawyer, and O'Brien was not represented in the estate by an attorney.

The day following the death of Von Stroh, Mr. Russell E. Dahl, the husband of the decedent's sister, came to Houston from Oregon to make funeral arrangements. While in Houston, Dahl visited McClelland's office in the courthouse and was informed by McClelland that Jerry S. O'Brien, who McClelland said was very competent, would be appointed to represent the decedent's estate. Dahl later met O'Brien and gave to him certain personal effects of the deceased which had already been delivered to Dahl. The deceased was buried in Houston. Dahl paid all of the funeral expenses and made a claim against the Von Stroh estate for $1,706.18, which claim was reflected on the inventory filed in the Probate Court. The signature of the appellant on the Court's order, approving the inventory, appraisement and list of claims, appears upon the same sheet of paper below the list of claims in which Dahl's claim is itemized. Mr. Dahl's claim was not paid, and he was not reimbursed for the funeral expenses.

The complete probate records of the deceased's estate were introduced into evidence and revealed that the total assets of the estate, including the proceeds of $3,500.00 from an insurance policy, amounted to $3,618.47. Soon after the assets of the estate had been taken into possession of the temporary administrator, and before most of the claims of the estate had been paid, the appellant McClelland entered an order authorizing Jerry S. O'Brien, a temporary administrator's fee of $2,000.00, and an attorney's fee of $500.00. The inventory, appraisement, and list of claims were made and sworn to by O'Brien on the 2nd day of February, 1960, and were approved by the appellant on the 23rd day of February, 1960. The inventory reflects total assets of the estate in the amount of $102.89. A typed notation of the list of assets reads as follows: "Numerous Insurance policies all of which had lapsed for nonpayment. TRAVELERS LIFE INS—group policy—which is in controversy but am in hopes of collecting same." The bank account of the Von Stroh estate in the Citizens State Bank reflects that the proceeds of the insurance policy in excess of $3,500.00 had already been paid and collected for the estate and deposited into the bank account on December 28, 1959.

There is nothing in the records of the Probate Court to reflect that the proceeds of the insurance policy had been collected until March 23, 1960, when it was shown in the application of the temporary administrator, and on that day the appellant authorized the temporary administrator's fees and attorney's fees in the sum of $2,500.00.

Records from the bank account of the Von Stroh estate, in the Citizens State Bank, Houston, Texas, reflected that two checks, one in the amount of $2,000.00 and one in the amount of $500.00, were drawn on the account by Jerry S. O'Brien, the temporary administrator of the estate, pursuant to the order signed by McClelland. The account was charged with the two checks on March 31, 1960. The $2,000.00 check, payable to Jerry S. O'Brien, bore the notation "Temp. Adm. Fees per court order #67899". The check for $500.00, payable to Jerry S. O'Brien, bore the notation "Attorney fees per court order #67899". The balance of the account remaining after these withdrawals was $1,118.47. Subsequent withdrawals to pay legitimate claims of the estate reduced the principal on deposit to $283.65.

Records from the same bank revealed that the check for $2,000.00 was deposited into O'Brien's personal account on March 31, 1960.

Records from O'Brien's bank account show that the day following, on April 1, 1960, a check for $500.00 was drawn by O'Brien and made payable to appellant, Clem McClelland. It bore the marginal notation in typed letters "Legal services", and an additional handprinted marginal notation "Insurance matter".

The $500.00 check drawn on O'Brien's account and made payable to the appellant was shown to have been endorsed by McClelland with his signature, and was deposited into his personal account in the Bank of the Southwest in Houston, Texas. The deposit slip reflecting this deposit bears the transit number of the Citizens State Bank and the notation "Legal Services".

During the trial of the case, the state introduced into evidence properly authenticated copies of applications and orders from numerous other estates in which the appellant had, while Probate Judge, awarded attorney's fees to Jerry S. O'Brien. Representative of such cases was the case of Ben Ernest Waite, deceased. The records revealed that the total assets of that estate amounted to $353.06. There were disbursements from the estate by Jerry S. O'Brien as temporary administrator of $10.00 for a bond premium, and $30.00 for court costs. The remaining balance was $313.06. The appellant then entered an order of the Court granting to Jerry S. O'Brien attorney's fees in the amount of $156.53, and temporary administrator's fees in the amount of $156.53. The two payments entirely depleted the assets of the estate. It was further shown that no attorney was actually appointed to represent Jerry S. O'Brien as temporary administrator of that estate.

The State urged the admission of these numerous other transactions in order to show the intent, system, scheme and design of the appellant McClelland, a Probate Judge, as a principal, along with Jerry S. O'Brien, in converting funds from estates under the guise of their being attorney's fees. It was the state's theory that these transactions showed that there had been no mistake in the Court's ordering attorney's fees paid in the instant case, and was also strong evidence of the intent of the appellant to appropriate and convert the money taken from the Von Stroh estate.

The appellant did not testify and offered the testimony of no witnesses in his behalf.

The evidence reveals that the total assets of the estate amounted to approximately $3,700.00. Approximately $900.00 in court costs and claims were paid. McClelland had knowledge of the claim for funeral expenses, which was entered on the inventory filed in the court, and which had the highest legal priority, and it was not paid. The temporary administrator's fee of $2,000.00 and the attorney's fee for

$500.00 nearly depleted the estate, and was far from reasonable under the circumstances. The appellant, while Judge of Probate Court, was paid an attorney's fee by O'Brien. The jury apparently adopted the view that this was actually a payment to appellant from the Von Stroh estate. The evidence of the numerous other transactions, as represented by the case of Ben Ernest Waite, we think, supplied the requisite unlawful intent which is an integral part of the offense, and showed the absence of any exonerating mistake of fact on the part of the appellant. In the absence of any testimony on behalf of the appellant, the jury was authorized to believe, and apparently did believe that such was the case. As this Court said in the companion case of O'Brien v. State, 376 S.W.2d 833, in which the evidence was substantially identical, the evidence is amply sufficient to show the guilt of the appellant McClelland as a principal, along with Jerry S. O'Brien, of the conversion from the estate of Gordon Von Stroh. The evidence here is amply sufficient for support of the jury's verdict.

In a voluminous brief, the appellant has presented to this Court five points upon which he relies for reversible error. Most of these points relied upon by appellant have all been considered by this Court recently in the cases of the co-indictee O'Brien, and in the former case of the appellant. O'Brien v. State, 376 S.W.2d 833, and McClelland v. State, 373 S.W.2d 674.

We shall limit our discussion of some of these points in the interest of brevity and in order not to be repetitious.

We shall consider the propositions in the order that they are raised and presented by appellant.

■ Appellant first contends that the trial court erred in refusing to hear evidence on his motion to quash the indictment before granting a change of venue. We have carefully examined the rather long document in the transcript denominated a Bill of Exception. It is not certified by the trial court as being true and correct, the motion to quash is not included within this bill. It is not even incorporated by reference to the bill. The bill does not recite and the court does not certify that a motion to quash was made in writing. This complained of error is not before us for review. Ticer v. State, 166 Tex.Cr.R. 334, 313 S.W.2d 301; Stephen v. State, 163 Tex. Cr.R. 505, 293 S.W.2d 789. We have, however, examined with care appellant's contention and adhere to the view expressed by the majority of this Court in appellant's former case, McClelland v. State, 373 S.W. 2d 674, that the trial court's action does not constitute reversible error. This proposition is overruled.

Appellant next contends that the evidence is not sufficient to sustain the conviction of appellant as a principal, and that the state has failed to establish the corpus delicti. We shall pretermit a discussion of this point for the reason that our views and our position are set forth in detail in appellant's former appeal, McClelland, supra, and in our opinion in O'Brien v. State, 376 S.W.2d 833. This contention is without merit.

■ The third contention brought forward by appellant is that the trial court erred in permitting proof of extraneous crimes during the development of the state's case in chief. We think that this contention was adequately disposed of and fully discussed in O'Brien, supra. Additionally, we are convinced that "intent" is an essential element of the crime of conversion. This contention is without merit.

■ Appellant's fourth proposition is that the trial court erred in failing to charge upon exculpatory statements. Appellant adopts the view that the check given him by O'Brien, with the notation: "Legal services—insurance matter", constituted an exculpatory statement. We have again read the numerous decisions of this court upon the necessity of a trial court charging upon exculpatory statements. It is our view

that the evidence adduced by the state does not come within the purview of either an exculpatory confession nor an admission. We are convinced that the landmark case of Otts v. State, 135 Tex.Cr.R. 28, 116 S.W. 2d 1084, 116 A.L.R. 1454 and the many subsequent decisions following Otts' case, do not bring evidence of the type herein complained of within the realm of exculpatory statements. We find no error in the action of the trial court in refusing appellant's charge upon exculpatory statements.

Lastly, appellant complains of the action of the trial court in refusing to charge the jury affirmatively that they must acquit appellant if they found from the evidence or had a reasonable doubt thereof, that the grand jury could reasonably have ascertained the name or names of the heirs and distributees interested in the Von Stroh estate by the use of reasonable diligence. We do not feel that the evidence warranted such a charge. The testimony adduced by the state from a former member of the grand jury supports the trial court's position. No error is reflected by the action of the trial court in this respect.

The remaining informal bills have also been carefully examined, and we find no reversible error reflected by any of them.

The judgment of the trial court is affirmed.

### ON APPELLANT'S MOTION FOR REHEARING

BELCHER, Commissioner.

Appellant takes this Court to task for our original disposition of his contention that the extraneous offenses were not admissible. He says our statement that "intent is an essential element of the crime of conversion" will hereafter make extraneous offenses admissible in numerous cases simply because intent is an essential element of many crimes. Our opinion is not to be so construed. We stated earlier in our opinion the State's theory as to their admissibility. We here observe that Jones v. State, Tex.Cr.App., 376 S.W.2d 842, is the authority upon which the trial court admitted the collateral offenses and supports his ruling. He gave the same charge as he gave in Jones v. State, supra.

The motion for rehearing is overruled.

Opinion approved by the Court.